UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA HEHRER, as Personal Representative
of the Estate of Joseph Hehrer, deceased,

                    Plaintiff,                Case No. 1:20-cv-1079

v.                                       Hon. Janet T. Neff

CLINTON COUNTY, *et al.*,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

On November 9, 2020, plaintiff Rhonda Hehrer, Personal Representative for the Estate of Joseph Hehrer, deceased, filed a 91-page complaint seeking damages related to the death of Joseph Hehrer (sometimes referred to as "Mr. Hehrer" or "Hehrer").  Plaintiff alleged a number of claims against 17 named defendants and seven unknown "Doe" defendants.  For purposes of this report, defendants Clinton County, Clinton County Sheriff Lawrence Jerue, Jail Administrator Thomas Wirth, and the sergeants and officers working at the jail will be referred to collectively as the "Clinton County Defendants."  Defendants Advanced Correctional Healthcare, Inc. ("ACH"), Dr. Daryl Tyrone Parker, Licensed Practical Nurse (LPN) Wendy Lynn Freed, and LPN Dawn Thelen will be referred to collectively as the "ACH defendants."  Finally, defendants Edward W. Sparrow Hospital Association (sometimes referred to as "Sparrow Hospital"), Kimberlee Chesney, M.D., Registered Nurse (RN) Wendy Embs, and RN Amarily Mendez will be referred to as the "Sparrow Defendants".  This matter is now before the Court on the ACH defendants' motion to dismiss (ECF No. 14).

1

### I.      Plaintiff's complaint

Mr. Hehrer was involved in a motor vehicle accident on January 18, 2019.  Compl. (ECF No. 1, PageID.13).  He suffered injuries and was taken to the Emergency Department at a facility operated by defendant Sparrow Hospital. *Id*. at PageID.14.  While he was being treated at the Emergency Department, "[d]iagnostic studies revealed the presence of elevated plasma glucose (275 mg/dL) and urinary glucose." *Id*.  Plaintiff alleged that,

> Despite these findings, Mr. Hehrer's attending medical staff, including, but not limited to, Dr. Kimberlee Chesney, M.D., Wendy Embs, R.N., and Amarily Mendez, R.N., failed to inform Mr. Hehrer of this abnormality, or instruct Mr. Hehrer relative to proper follow-up care for hyperglycemia. Mr. Hehrer was prescribed no medication for this condition and was only instructed to follow-up "as needed" with a family medicine physician.

*Id*.

Mr. Hehrer was issued a misdemeanor citation for operating under the influence of drugs, second offense, and failure to wear a seatbelt.  *Id*.  Five days after the accident, Clinton County Sheriff Deputies arrested Mr. Hehrer and "booked [him] as inmate 68391 in the Clinton County Jail (sometimes referred to as the "Jail") for a probation violation and DUI related to the motor vehicle accident." *Id*.

> Upon Mr. Hehrer's arrival to the Clinton County Jail, Officer Debra Lott completed a Jail Medical Screen History Report at 1551 hours on January 23, 2019. Having not been told of the elevated plasma and urinary glucose, Mr. Hehrer answered negatively to the questions: "Do you have a history of . . . diabetes . . . ?" and "Are you currently on any medications, for any reason?"

*Id*. at PageID.15.

After being held in the Jail for more than one month, Mr. Hehrer started reporting medical problems.  On or about Friday, March 1, 2019, Hehrer began exhibiting signs of weakness. *Id*. at PageID.16.  On or about March 4, 2019, Hehrer called his sister stating "'I've been sick as fuck since Friday,' 'my body's weak as shit' and 'I can't hold any food down.'" *Id*.  He also said

2

that "I went and seen a nurse [sic], but they wanted to charge a shit load for meds, so I'm just going to fight it out." *Id*.  On March 5, 2019, Hehrer submitted a sick call request to jail staff complaining of other symptoms (fever, queasiness, headaches, heartburn, and vomiting).  *Id*.  At various times from March 6, 2019, through March 9, 2019, Hehrer was under medical observation and periodically evaluated.  *Id.* at PageID.16-38.  Hehrer's condition deteriorated.  On March 9, 2019, Hehrer was taken by ambulance to Sparrow Hospital. Hehrer was admitted to the critical care unit, diagnosed with diabetic ketoacidosis and septic shock, and died at the hospital on March 13, 2019. *Id*. at PageID.26-38.  Patrick Hansma, D.O. conducted an autopsy on March 14, 2019, which "concluded Mr. Hehrer's cause of death was the result of 'multisystem organ dysfunction due to diabetic ketoacidosis.'"  *Id*.

Plaintiff alleged four counts against the ACH defendants.  In Count II, plaintiff alleged that defendant Dr. Parker committed malpractice in treating Mr. Hehrer at the Jail.  *Id*. at PageID.56-60.  In Count IV plaintiff alleged that the "nursing staff" at Sparrow Hospital, ACH and the Jail committed malpractice in treating Hehrer.  *Id*. at PageID.64-67.  In this Count, plaintiff does not name any particular member of the nursing staff, referring to Sparrow Hospital, ACH, and the Jail's "agents, assigns, representatives and employees, including but not limited to RNs, LPNs, RTs nursing assistants and CNA's."  *Id*.

In Count VI, plaintiff alleged that defendants Dr. Parker, LPN Freed, and LPN Thelen violated Mr. Hehrer's rights under the 8th and 14th Amendments by being deliberately indifferent to Hehrer's serious medical needs.  *Id*. at PageID.73-79.  In Count VIII ("Monell Claim"), plaintiff alleged that defendant ACH violated Hehrer's rights under the 8th and 14th Amendments because "ACH adopted, promulgated, encouraged, condoned, and/or tolerated

official customs, policies, practices, and/or procedures" which "led to deliberate indifference to Mr. Hehrer's serious medical needs." *Id*. at PageID.85-90.[1]

## II.     Defendants' motion to dismiss

## A.     Legal Standard

The ACH defendants seek to dismiss this complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Finally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

---

[1] The Court notes that plaintiff has a separate "Monell Claim" in Count VII against Clinton County with respect to policies involving non-medical jail personnel.

4

**B.** **Deliberate indifference claims (Counts VI and VIII)**

**1.** **Legal standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).  To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.  *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff has alleged that the ACH defendants violated Mr. Hehrer's rights under the 8th and 14th Amendments by being deliberately indifferent to his serious medical needs. The Court views these claims as brought under the 14th Amendment because Hehrer was a pre-trial detainee.[2]  It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the 8th Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (l976). "Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Thus, "[w]hether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Id.*  *See Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) ("[a]lthough the Eighth Amendment's protections apply

---

[2] Plaintiff was arrested on January 23, 2019, and booked at the Jail "for a probation violation and DUI related to the motor vehicle accident on January 18, 2019." Compl. at PageID.14.  "As a result of Mr. Hehrer's DUI, he was issued a $500 cash or surety bond in the Clinton County District Court by Magistrate Nicole Maneval. However, due to Mr. Hehrer's probation violation, Judge Michelle Rick in the Clinton County Circuit Court issued a no bond [sic]." *Id.* at PageID.15.

5

specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well") (internal citation omitted).

A viable 8th Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an 8th Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734, F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

### 2.    14th Amendment claims against Dr. Parker, LPN Freed, and LPN Thelen (Count VI)

In Count VI, plaintiff alleged that Dr. Parker, LPN Freed, and LPN Thelen were deliberately indifferent to Mr. Hehrer's serious medical needs while Hehrer was at the Jail from January 23, 2019, through March 9, 2019.  Count VI incorporates 191 paragraphs of allegations. While Count VI alleges misconduct during Hehrer's incarceration, the allegations involve two distinct periods of time.

During the first period, January 23, 2019, through February 28, 2019, plaintiff does not allege that Hehrer suffered from any symptoms.  During that period, Hehrer had one contact with LPN Freed for a health appraisal on February 5, 2019.  Compl. at ¶ 48, PageID.15.  The gist of plaintiff's claim during the first period is that defendants were deliberately indifferent for failing to diagnose or treat Hehrer for "hyperglycemia, hypothermia, diabetic ketoacidosis, and/or septic shock," even though he exhibited no symptoms and made no complaints.  *Id.* at ¶ 198, PageID.74.

Plaintiff first alleged symptoms on March 1, 2019.  *Id*. at ¶ 49, PageID.16.  This marks the second period, March 1, 2019, through March 9, 2019, during which plaintiff alleged that Mr. Hehrer displayed a number of symptoms, had a deteriorating condition, and was sent to the hospital.  Commencing on March 1, 2019, plaintiff alleged the actions of defendants in minute detail.  *See* Compl. at ¶¶ 49-128, PageID.16-38. The gist of plaintiff's claim during the second period is that Hehrer exhibited serious symptoms and defendants were deliberately indifferent for failing to treat Hehrer for "hyperglycemia, hypothermia, diabetic ketoacidosis, and/or septic shock."  *Id.* at ¶ 198, PageID.74.

7

a.    **Plaintiff's 14th Amendment claims against Dr. Parker, LPN Freed and LPN Thelen from January 23, 2019, through February 28, 2019**

Dr. Parker, LPN Freed, and LPN Thelen contend that plaintiff's complaint is not sufficient to establish the objective component of a deliberate indifference claim because Mr. Hehrer: did not report a history of diabetes to the ACH medical providers; was never diagnosed with diabetic ketoacidosis at the Jail; and was not diagnosed with such condition prior to presenting to the Jail. *See* Defendants' Brief (ECF No. 14, PageID.251-256). During initial screening upon his arrival at the Jail on January 23, 2019, Hehrer denied a history of diabetes and denied taking "any medications, for any reason." *See* Compl. at PageID.15. During a medical history and health appraisal on February 5, 2019, LPN Freed reviewed Hehrer's screening report and noted that Hehrer "had no history of diabetes." *Id*. at ¶ 48, PageID.15. Plaintiff alleged no further contact with the medical department, until on or about March 1, 2019, when he "began exhibiting signs of illness." *Id*. at ¶ 49, PageID.16.

The objective component of a § 1983 claim asserting a constitutional violation for denial of medical care requires the existence of a "sufficiently serious" medical need. *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010). "Such a medical need has been defined as one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.*, quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). As discussed, plaintiff alleged that Mr. Hehrer was diagnosed with diabetic ketoacidosis and septic shock sometime after he was admitted to Sparrow Hospital on March 9, 2019, and died from multisystem organ dysfunction due to diabetic ketoacidosis on March 13, 2019. Compl. at PageID.36-38. There is no allegation that Hehrer disclosed a history of diabetes or a diagnosis of diabetic ketoacidosis prior to his admission to the Jail. The thrust of plaintiff's claim is that defendants should have

8

done more to treat Hehrer's diabetes prior to his medical emergency in March 2019 (*e.g.*, defendants ignored Hehrer's self-reports of symptoms, failed to ensure that Hehrer was eating meals and drinking water, and failed "to observe and/or monitor" Hehrer as directed).  *Id.* at PageID.75-76.  However, plaintiff did not allege any such conduct by the ACH defendants until March 6, 2019.  *See id.* at ¶ 55, PageID.16 ("At 0900 hours on March 6, 2019, Mr. Hehrer was seen and evaluated by Defendant Nurse Freed").

These allegations are not sufficient to allege a constitutional violation by the ACH defendants between January 23, 2019, and February 28, 2019.  "Allegations that more should have been done by way of diagnosis and treatment and suggestions of other options that were not pursued raise at most a claim of medical malpractice, not a cognizable Eighth Amendment claim." *Rhinehart v. Scutt*, 894 F.3d 721, 741 (6th Cir. 2018) (internal brackets and quotation marks omitted), citing *Estelle*, 429 U.S. at 107.  Furthermore, even if Mr. Hehrer felt sick as early as March 1, 2019, he did not allege any contact with or medical treatment from the ACH defendants until LPN Freed evaluated him on March 6, 2019.  In short, plaintiff has failed to plead factual content that allows the Court to draw the reasonable inference that Dr. Parker, LPN Freed, and LPN Thelen are liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at 678.

Plaintiff's complaint failed to allege a sufficiently serious medical need to support a 14th Amendment claim against defendants Dr. Parker, LPN Freed, or LPN Thelen from January 23, 2019, through February 28, 2019.  Accordingly, defendants' motion to dismiss should be granted as to the 14th Amendment claim that Dr. Parker, LPN Freed, and LPN Thelen were deliberately indifferent to Mr. Hehrer's serious medical needs from January 23, 2019, through February 28, 2019.

**b.      Plaintiff's 14th Amendment claims against Dr. Parker, LPN Freed and
LPN Thelen from March 1, 2019, through March 9, 2019**

Mr. Hehrer's condition began to deteriorate on March 1, 2019.    Compl. at
PageID.16-36.  Plaintiff does not allege any misconduct by Dr. Parker, LPN Freed or LPN Thelen
from March 1, 2019, through March 5, 2019.

Plaintiff alleged that on March 6, 2019, at approximately 0032 hours, Officer
Hungerford noted that Mr. Hehrer was moved from "M Dorm" to "recv 4, 3" for medical
observation.  *Id.* at ¶ 54, PageID.16. At 0900 hours, LPN Freed evaluated Hehrer, stating that
Hehrer experienced nausea and vomiting since March 2nd and that he did not kite medical "cause
I'm not that sick." *Id.* at ¶¶ 55-56, PageID.16-17.  At 0930 hours, LPN Freed discussed Hehrer's
condition with Dr. Parker who ordered "1) continue on medical observation; 2) daily weights; 3)
Zofran 8 mg p.o. q.d. to b.i.d. x 3 days; 4) Omeprazole 20 mg p.o. q.d. p.r.n.; 5) increase fluids
and rest; 6) notify medical when merited."  *Id.* at ¶ 57, PageID.17.  Later that day, at 1800 hours,
Dr. Parker evaluated Hehrer at the Jail.  *Id.* at ¶ 58.  Plaintiff alleged that Dr. Parker "noted that
Mr. Hehrer had suffered nausea and vomiting for four (4) days and had lost fourteen (14) pounds
since February 5, 2019" and that "[n]o updated vitals appear on the Medical Progress Note for that
evening."  *Id.* at PageID.17-18.

Plaintiff alleged that despite medical records showing that Mr. Hehrer had rapid
weight loss, continued nausea and vomiting for four days and a low temperature of 96.2 degrees
that morning, Hehrer was removed from medical observation and returned to "M Dorm" at 2026
hours."  *Id.* at ¶ 59.  Plaintiff does not allege who ordered the move.  *Id.*

On March 7, 2019, Mr. Hehrer was brought to "booking" where his vitals were
taken. *Id.* at ¶ 68.  PageID.19-20.  Plaintiff alleged that former defendant Dr. Mashni spoke with
Jail personnel at 2030.  "After hearing the symptoms and vitals, his orders were to give 8 mg of

Zofran from stock, tell Mr. Hehrer to drink plenty of water, and if the nausea goes away in an hour or two, to give 2 Tylenol." *Id*. Hehrer was given 8 mg Zofran and "placed in REC-1 for OBS." *Id*.

The following events occurred on March 8, 2019. At 0733 hours LPN Freed walked by Mr. Hehrer's cell without checking on him. *Id*. at ¶ 73, PageID.21. At 0914 hours, Hehrer "banged on the door begging for help." *Id*. at ¶ 76. LPN Freed assessed Hehrer at 0936 hours. *Id*. at ¶ 78. At 1000 hours, LPN Freed completed a lengthy medical progress note as follows:

Subjective Complaint:

1) patient brought to medical Rec. last night per officers 3/7/19 due to patient approached an officer and stated he was throwing up.

Vitals: BP 121/85; P 113; R 18; T 96.7; SpO2 96%; weight 110

Objective:

Eye: PERRLA
Lungs/Chest: [no shortness of breath]
Abdomen: soft
Genito-Urinary: states having trouble peeing
Skin: warm and dry
Neuro: A+O x 3; [increased] anxiety

Assessment:
Pt states it's his birthday and he would like to spend it "at home or at the hospital." States appetite is "poor" didn't eat supper last night cause "I didn't like the nachos." Pt states "I'm throwing up blood and it's in the drain." [No] blood noted in drain on floor, vomiting unwitnessed. Requesting ice chips, officer notified.

3/8/19 0945 Dr. Parker notified. Zofran 8 mg p.o. b.i.d. x 3 days. Continue Prilosec 20 mg p.o. q.d. Obtained CBC, CMP today. Pt will need to continue in medical observation.

Follow-up: daily p.r.n.

Patient Education: [increase] rest [increase] fluids

*Id*. at ¶ 79, PageID.21-22.

The note also stated,

> Labs per order obtained left [antecubital] space x 1 attempt. Pt tolerated well. Specimen labeled and placed in refrigerator for pick up. Spoke [with] administration about monitoring pt's intake.

*Id*. at ¶ 82, PageID.23.

At 1220 hours, defendant "Officer John Doe" stood outside Mr. Hehrer's cell as he vomited.  *Id*. at ¶ 85.  At 1221 hours LPN Freed observed Hehrer vomiting "and merely walked away."  *Id*.

At 1400 hours, LPN Freed entered a note,

> Pt refusing breakfast and refused lunch. States "I don't like the food." Pt also states "I'm ok can I go to the back."  Explained to patient Doctor requesting medical observation. Will cont[inue] to monitor.

*Id*. at ¶ 87, PageID.24.  LPN Freed failed to record her observation that Hehrer vomited at 1221 hours.  *Id*. at ¶ 88.  At 1404 hours, LPN Freed "walked by his cell twice and failed to look in and/or check on him."  *Id*. at ¶ 89.  At 1430 hours, LPN Freed noted, "Pt been resting on mat with eyes closed. Will cont[inue] to monitor status for changes."  *Id*. at ¶ 90.  There are no further allegations regarding LPN Freed on that date.

The following allegations relate to March 9, 2019.   LPN Thelen went on duty at 0649 hours and "spoke with Defendants Officers John Does 1-5 in the cage while going over paperwork."  *Id*. at ¶ 108.a., PageID.28.  At 0655 hours, "Defendant Officer John Doe appeared to be having a discussion with Nurse Thelen and Officer John Doe 2 in the cage about Mr. Hehrer, and yet they did nothing to assist him."  *Id*. at ¶ 108.c.  Thelen and a John Doe defendant appeared to be discussing Hehrer's condition at 0656 hours.  *Id*. at ¶ 108.e., PageID.29.  Plaintiff alleged that there was vomit on the cell floor and that Thelen walked past Hehrer's cell twice, at 0707 and

0731.  *Id*. at ¶¶ 108.j. and m., PageID.29-30.  Thelen did not enter Hehrer's cell until 0851, at

which time she examined him.  *Id*. at ¶ 108.s., PageID.31.

At 0900 LPN Thelen observed Hehrer vomiting.  *Id*. at ¶ 108.x., PageID.32.  Thelen

wrote the following note:

> Pt vomited up Zofran and Prilosec. Coffee ground emesis. Pt unable to hold cup or
> meds on his own.  Pt unable to stand. Pt skin cool to touch and pale yellow. Pt stated
> that he couldn't remember the last time he urinated or had a bowel movement or
> ate food/drank fluids. Sergeant notified and called 911.  Lab specimens sent [with]
> pt. Dr. Parker notified.

*Id*. at ¶ 108.x., PageID.33.  The ambulance arrived at about 0912 hours.  *Id*. at ¶ 111, PageID.36.

At 0915, LPN Thelen bought Hehrer's blood vials "that were almost 24 hours old" to EMS

personnel.  *Id*. at ¶ 112.

Plaintiff has alleged sufficient facts to establish the objective component of a 14th

Amendment claim during this time period.  The issue for the Court is whether plaintiff has alleged

sufficient facts to establish the subjective component of her claim.

### i.     Dr. Parker

The complaint sets out three instances which involve Dr. Parker.  First, Dr. Parker

responded to LPN Freed's concerns at 0930 on March 6, 2019, by prescribing medication, medical

observation, daily weights, increased fluids, rest, and to notify medical when merited.  Compl. at

¶ 57.  Second, Dr. Parker examined Mr. Hehrer later that day (1400 hours) and noted that Hehrer

had suffered nausea and vomiting for four days and had lost 14 pounds since February 5, 2019.

*Id*. at ¶ 58.  Third, on March 8, 2019, LPN Freed noted,

> 0945 Dr. Parker notified. Zofran 8 mg p.o. b.i.d. x 3 days. Continue Prilosec 20 mg
> p.o. q.d. Obtained CBC, CMP today. Pt will need to continue in medical
> observation.

*Id*. at ¶ 79.

13

Plaintiff's allegations fail to allege sufficient facts to demonstrate the subjective component of a deliberate indifference claim against Dr. Parker.  The record reflects that Dr. Parker had limited interaction with Mr. Hehrer and provided him with medical treatment to address his symptoms, primarily vomiting.  "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."  *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted).  Based on these allegations, Dr. Parker did not exhibit obduracy or wantonness in treating Hehrer, nor exhibit a mental state equivalent to criminal recklessness. See *Whitley*, 475 U.S. at 319; *Santiago*, 734 F.3d at 591.  Accordingly, defendants' motion to dismiss should be granted as to the 14th Amendment claim that Dr. Parker was deliberately indifferent to Mr. Hehrer's serious medical needs from March 1, 2019, through March 9, 2019.

### ii.    LPN Freed

As discussed, LPN Freed monitored and evaluated Mr. Hehrer on March 6, 2019, and March 8, 2019.   The crux of plaintiff's claim appears to be that LPN Freed failed to observe Hehrer's condition as directed by Dr. Parker, *e.g.*, that LPN Freed walked by Hehrer's cell without entering.  The Court does not infer from plaintiff's allegations that LPN Freed was not observing Hehrer's condition.  Freed made a number of notations with respect to Hehrer's condition and evaluated him.  Based on these allegations, LPN Freed did not exhibit obduracy or wantonness in treating Hehrer, nor exhibit a mental state equivalent to criminal recklessness. *See Whitley*, 475 U.S. at 319; *Santiago*, 734 F.3d at 591.  Accordingly, defendants' motion to dismiss should be granted as to the 14th Amendment claim that LPN Freed was deliberately indifferent to Mr. Hehrer's serious medical needs from March 1, 2019, through March 9, 2019.

### iii.    LPN Thelen

LPN Thelen was involved with Mr. Hehrer's treatment for a little over two hours on March 9, 2019.  As discussed, it was LPN Thelen's evaluation of Hehrer which led to the 911 call.  While plaintiff alleged that Thelen walked by Hehrer's cell without entering it and stood outside the cell talking to officers, the Court does not infer this to mean that Thelen was not observing Hehrer as directed by Dr. Parker.  Based on these allegations, LPN Thelen did not exhibit obduracy or wantonness in treating Hehrer, nor exhibit a mental state equivalent to criminal recklessness.  *See Whitley*, 475 U.S. at 319; *Santiago*, 734 F.3d at 591.  Accordingly, defendants' motion to dismiss should be granted as to the 14th Amendment claim that LPN Thelen was deliberately indifferent to Mr. Hehrer's serious medical needs from March 1, 2019, through March 9, 2019.

### 3.    14th Amendment claim against ACH (Count VIII)

A local government such as Clinton County, or a private corporation performing its services as an agent of the County such as ACH, "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) (emphasis omitted).  Rather, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff.  *Los Angeles County v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)).  In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the

execution of that policy.  *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.

        Plaintiff claims that ACH's operation at the Jail was regulated by policies and customs which were designed to de-humanize inmates and to lead its employees to engage in deliberate indifference to inmates' serious medical needs.  Compl. at PageID.84-90.  Plaintiff alleged that these policies and customs were the moving force behind the individual ACH employees' acts of deliberate indifference to Mr. Hehrer's serious medical needs.  *Id*. at PageID.87-90.  In its motion to dismiss, ACH contends that plaintiff did not plead sufficient facts to show that ACH had a policy, procedure, custom or practice (collectively referred to as its "policies and customs") to act with deliberate indifference to the serious medical needs of Jail inmates in violation of the 8th or 14th Amendment.

        As discussed, *supra*, plaintiff has not stated a cause of action against the ACH employees, Dr. Parker, LPN Freed, and LPN Thelen, for deliberate indifference to Mr. Hehrer's serious medical needs in violation of the 14th Amendment.  Since plaintiff failed to allege that ACH's employees violated Hehrer's constitutional rights, she has failed to allege a cause of action against ACH on the basis that "Mr. Hehrer's constitutional rights were violated and that Defendant ACH's policy and/or custom of failing to staff, screen, train and/or supervise its employees were a 'moving force' behind the deprivation of Mr. Hehrer's Eighth and Fourteenth Amendment Rights to be free from inhumane treatment while incarcerated." *Id.* at ¶ 215, PageID.87.  In summary, plaintiff has not alleged sufficient facts to establish a "plausible claim of *Monell* liability" against ACH.  Accordingly, defendant ACH's motion to dismiss plaintiff's 14th Amendment claim should be granted.

C.    **Michigan Wrongful Death Act**

ACH defendants contend that plaintiff is improperly incorporating a Wrongful Death claim as part of her § 1983 actions for deliberate indifference.   As an initial matter, while plaintiff's state law claims for medical malpractice explicitly refer to "[a]ny and all other damages as identified through the course of discovery as otherwise available under the Michigan Wrongful Death Act, MCL 600.2922" (*see* Compl. at PageID.56, 60, 63, 67), plaintiff's federal claims brought pursuant to § 1983 (*see* Counts V, VI, VII, and VIII) do not explicitly refer to damages recoverable under the "Michigan Wrongful Death Act".

Even if the Court construed plaintiff's complaint as referencing Michigan's Wrongful Death Act in Counts V, VI, VII, and VIII, this Court has held that damages under that Act are recoverable in a § 1983 action.

In *Frontier Insurance Co. v. Blaty*, 454 F.3d 590 (6th Cir. 2006), the Sixth Circuit directly and extensively addressed the interface between 42 U.S.C. § 1983 violations and the damages available under the Michigan wrongful death statute. In *Blaty*, a thirteen-month old child died from an untreated bronchitis infection while in the custody of a foster care agency. *Id*. at 592-93.  Her parents brought a § 1983 action before this Court seeking hedonic damages under common law, pursuant to § 1988, for the infant's post-death loss of enjoyment of life. *Id*. at 599. This Court determined that the Michigan wrongful death statute controlled the availability of damages. *Id*. No damages for loss of enjoyment of life were recoverable under common law because the Michigan statute modified the common law. *Id*. (citations omitted).

The Sixth Circuit affirmed this Court's decision and determined that the Michigan statute was not inconsistent with the Constitution or policies underlying § 1983. *Id*. In reaching that conclusion, the Sixth Circuit emphasized, "Michigan's wrongful death act, to repeat, authorizes an award of damages for survivor's losses of support, society, and companionship." *Id*. at 600. The fact that the infant in *Blaty* did not recover damages for loss of society and companionship under the statute is because the damages were calculated at zero, not because the damages were unrecoverable under law. *Id*. at 603-04.  Thus, *Blaty* recognizes that a decedent's estate may recover the full extent of damages available under Michigan's wrongful death statute for § 1983 violations.

*Warren v. Shilling*, No. 2:12-cv-13, 2015 WL 1726787 at *3 (W.D. Mich. April 15, 2015). Accordingly, ACH defendants' motion to dismiss should be denied to the extent it seeks dismissal for improperly incorporating a wrongful death claim in a cause of action brought under § 1983.[3]

### D.    Medical malpractice (Counts II and IV)

Plaintiff has alleged state medical malpractice claims against Dr. Parker (Count II) and "nursing staff" (Count IV).    The ACH defendants seek to dismiss these counts because plaintiff failed to state a claim upon which relief can be granted.

> In order to establish a cause of action for medical malpractice, a plaintiff must establish four elements: (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care.  These common-law elements have been codified in MCL 600.2912a[.]

*Craig ex rel. Craig v. Oakwood Hospital*, 471 Mich. 67, 86; 684 N.W.2d 296 (2004) (footnotes omitted).  In addition, M.C.L. § 600.2912a provides in pertinent part,

> (1) Subject to subsection (2), in an action alleging malpractice, the plaintiff has the burden of proving that in light of the state of the art existing at the time of the alleged malpractice:
>
> (a) The defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury. . . .
>
> (2)  In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants.  In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.

---

[3] The undersigned notes that if the Court adopts the recommendation to dismiss the § 1983 claims against the ACH defendants, then the "Wrongful Death Act" issue becomes moot as to them.  However, that issue would remain as to the § 1983 claims alleged against the Clinton County defendants.

M.C.L. § 600.2912a(1)(a) and (2).

The gist of defendants' motion is that plaintiff's "Statement of Facts" did not put Dr. Parker, LPN Freed, and LPN Thelen on reasonable notice as to the claims and theories alleged against them.  Defendants cite *Simonelli v. Cassidy*, 336 Mich. 635; 59 N.W.2d 28 (1953) and *Dacon v. Transue*, 441 Mich. 315; 490 N.W.2d 369 (1992), for the proposition that a medical malpractice complaint must put a defendant on reasonable notice as to the claims and theories against him.

In *Simonelli*, the Michigan Supreme Court stated that:

Plaintiff has alleged negligence in failing to diagnose an undefined malady and in failing to take proper precautions to prevent injury during the course of the operation, but we find only one specific factual statement. That is, that in the operation defendant cut the carotid artery. While the plaintiff alleges that the defendant was negligent, he does not allege the proper or safe way of operating nor does he say that the cutting of the artery itself was negligent.  It is possible that under the most accepted and advanced surgical methods it would be necessary to sever the carotid artery in order to correct certain specific maladies.  However, we can only conjecture, for we are not informed as to the type of malady or disease from which the plaintiff's wife suffered, the accepted method of diagnosing the malady, or the proper treatment of such malady when discovered. Nor are we informed as to the proper method, if one exists, of protecting the person being operated upon in the event it becomes necessary to cut the carotid artery. To repeat, except for conclusions and general allegation of negligence, the declaration informs us of nothing more than the cutting of the artery. We do not believe that such allegations constitute a sufficient statement of facts to establish a cause of action.

There are many simple cases where, when certain facts are shown, a general allegation of negligence or want of care gives all the information needed; and in such cases the whole, taken together, makes a good declaration. But a naked charge that a person negligently hurt another, with nothing more, cannot be sufficient. *Schindler v. Milwaukee, L. S. & W. Railway Company*, 77 Mich. 136, 43 N.W. 911, 917.

In an action for damages occasioned by the negligence or malpractice of a physician or surgeon, every fact necessary to constitute a cause of action must be alleged in the declaration, complaint, or petition, and, moreover, such facts must be alleged with reasonable definiteness and certainty, although it is not necessary to couch the declaration in the technical language of the medical profession. Thus, it is essential to allege, with reasonable definiteness and certainty, the duty of the

physician or surgeon to the person injured, the breach of duty complained of, the causal relation between the breach of duty and the injuries complained of, and resulting damage.

*Simonelli*, 336 Mich. at 643-44 (internal quotation marks omitted).

In *Dacon*, the Michigan Supreme Court re-affirmed the court's analysis in *Simonelli*:

To extricate himself from the difficulties caused by his failure to plead the delay in the initial administration of antibiotics, plaintiff suggests that this Court ought to abandon *Simonelli*, *supra*, a case requiring that medical malpractice defendants be provided with reasonable notice of the claims against them.

In *Simonelli*, this Court affirmed a lower court's dismissal of a complaint for failure to state a claim. The question we considered was whether the complaint before us provided sufficient facts to support a cause of action. This Court held that it did not. As we wrote, "Plaintiff has alleged negligence in failing to diagnose an undefined malady and in failing to take proper precautions to prevent injury during the course of the operation, but we find only one specific factual statement. . . . We do not believe that such allegations constitute a sufficient statement of facts to establish a cause of action." *Simonelli*, *supra*, 336 Mich. at 643, 59 N.W.2d 28. Although decided in the context of a medical malpractice action, the *Simonelli*, Court applied general principles of pleading. Illustrative is the Court's reliance on cases such as *Creen v. Michigan Central R. Co.*, 168 Mich. 104, 133 N.W. 956 (1911), which indicated: " 'When a declaration fails to advise the defendant with reasonable certainty, according to the circumstances of the case, of the facts upon which plaintiff proposes to rely, and will seek to prove it, it cannot be sustained.' " *Simonelli*, *supra* 336 Mich. at 644, 59 N.W.2d 28.  Because *Simonelli* hinged on the importance of fair notice to the defendant and not some procedural quirk of 1950's civil practice, *its lesson is neither obsolete nor anachronistic and is one we will continue to follow*.

*Dacon*, 441 Mich. at 332-33 (emphasis added).

The question before this Court is whether plaintiff's complaint has provided the defendants Dr. Parker, LPN Freed, and LPN Thelen with reasonable notice of the claims and theories of medical malpractice alleged against them.

### 1.    Dr. Parker (Count II)

Paragraph 174 of plaintiff's complaint alleged a list of malpractice claims arising from Dr. Parker's failure to properly treat Mr. Hehrer, commencing on January 23, 2019, the date that Hehrer arrived at the Jail. *See* Compl. at PageID.58-60.  For example, plaintiff alleged that,

> During Mr. Hehrer's incarceration at the Clinton County Jail on January 23, 2019, and continuously thereafter, Defendant Dr. Parker failed to monitor Mr. Hehrer's vital signs at all times and treat him for any signs and symptoms of diabetic ketoacidosis and septic shock[.]

*Id*. at ¶ 174.a., PageID.58.  Plaintiff's other allegations of malpractice follow this format, alleging, among other things, that commencing on January 23, 2019, Dr. Parker did not properly treat Hehrer's diabetic ketoacidosis and septic shock by: failing to order appropriate lab studies; failing to fully appreciate his symptoms and transfer him to an appropriate medical facility; failing to personally review all nursing reports;  failing to personally travel to the Jail and evaluate him; failing "to personally follow up on all lab and other testing and convey any and all results to any transferring medical institution"; failing to consult with appropriate medical specialists; failing to "exercise skill and caution when involved in the care of Mr. Hehrer by timely making a diagnosis of septic shock and timely documenting same"; failing to "exercise skill and caution when involved in the care of Mr. Hehrer by timely making a diagnosis of diabetic ketoacidosis and timely documenting the same"; and failing to "adhere to any and all additional requirements of the standard of care as may be revealed through the discovery process."  *Id*. at PageID.58-60.

Plaintiff's complaint included an affidavit of meritorious claim from Neil J. Farber, M.D.  *See* Farber Aff. (ECF No. 1-3).  Dr. Farber's affidavit lists the same list of malpractice claims as alleged in the complaint, without addressing any particular action taken by Dr. Parker, including an opinion about the unknown conduct, *i.e.*, "Dr. Parker and Dr. Mashni were required

to adhere to any and all additional requiremenst of the standard of care as may be revealed through the discovery process." *Id*. at PageID.109.

Based on this record, plaintiff's complaint does not allege "with reasonable definiteness and certainty" the duty which Dr. Parker owed to treat Mr. Hehrer for diabetic ketoacidosis and septic shock commencing on January 23, 2019.  At that time, Hehrer had no history of diabetes, took no medication, and exhibited no symptoms. *See Simonelli*, 336 Mich. at 644.  Plaintiff's vague allegations of malpractice appear to be based on Dr. Parker's failure to treat a new jail inmate with no health problems.   In this regard, while Hehrer exhibited serious symptoms in March 2019, plaintiff does not allege any factual basis for Dr. Parker treating Hehrer for diabetic ketoacidosis and septic shock commencing on January 23, 2019.

Next, while the complaint alleged two interactions between Dr. Parker and Mr. Hehrer on March 6, 2019, and one interaction on March 8, 2019, plaintiff does not allege "with reasonable definiteness and certainty" how Dr. Parker breached his duties owed to Mr. Hehrer commencing on those dates.  *See Simonelli*, 336 Mich. at 644.

Accordingly, defendant Dr. Parker's motion to dismiss the medical malpractice claim alleged in Count II should be granted without prejudice.  In reaching this determination, the undersigned concludes that while plaintiff's complaint is deficient, she has identified facts which may support a claim for medical malpractice in March 2019.  For this reason, the Court should allow plaintiff to amend her medical malpractice claim against Dr. Parker with respect to his actions on or after March 1, 2019.

### 2.      LPN Freed and LPN Thelen (Count IV)

Plaintiff does not allege any particular malpractice committed by these two nurses at the Jail.  Rather, plaintiff set out an omnibus claim against all nurses and medical staff who might have had contact with Mr. Hehrer, alleging that:

> The standard of care applicable to the nursing staff at Defendant Edward Sparrow Hospital, Defendant Advanced Correctional Healthcare and the Clinton County Jail, by and through their agents, assigns, representatives and employees, including but not limited to RNs, LPNs, RTs, nursing assistants, and CNA's is the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

Compl. at ¶ 181, PageID.64.  Plaintiff's complaint included an affidavit of meritorious claim related to LPN Freed and LPN Thelen.  *See* Kimberly Steiner, LPN Aff. (ECF No. 1-5).  As with Dr. Farber's affidavit, LPN Steiner's affidavit is void of any particular acts of malpractice.

As pled, plaintiff's medical malpractice claim against LPN Freed and LPN Thelen does not have "facial plausibility."  *See Iqbal*, 556 U.S. at 678.  Mr. Hehrer was in the custody of the Jail from January 23, 2019, through March 9, 2019, and was treated at Sparrow Hospital until he passed away on March 13, 2019.  Plaintiff has not alleged any particular act of medical malpractice committed by either LPN Freed or LPN Thelen.  In this regard, plaintiff's complaint lumps together different groups of "nursing staff" (RNs, LPNs, RTs, nursing assistants, and CNA's) working at different places into a single "nursing" malpractice claim without identifying any particular defendant or any particular conduct.  *See* Compl. at PageID.64-67.

Accordingly, defendants LPN Freed and LPN Thelen's motion to dismiss the medical malpractice claim alleged in Count IV should be granted without prejudice.  In reaching this determination, the undersigned concludes that while plaintiff's complaint is deficient, she has identified facts which may support a claim for medical malpractice in March 2019.  For this reason,

the Court should allow plaintiff to amend her medical malpractice claim against LPN Freed and LPN Thelen with respect to their actions on or after March 1, 2019.

### III.    RECOMMENDATION

Accordingly, I respectfully recommend that the ACH defendants' motion to dismiss (ECF No. 14) be **GRANTED in part** and **DENIED in part** as follows:

A.    The motion should be **GRANTED** as to the 14th Amendment claims alleged against defendants Dr. Parker, LPN Freed, and LPN Thelen in Count VI.

B.    The motion should be **GRANTED** as to the 14th Amendment claims alleged against defendant ACH in Count VIII and ACH should be **DISMISSED** from this action.

C.    The motion should be **DENIED** to the extent it seeks dismissal for improperly incorporating a wrongful death claim for damages under Michigan's Wrongful Death Statute, M.C.L. § 600.9222 within a claim brought pursuant to 42 U.S.C. § 1983.

D.    The motion should be **GRANTED without prejudice** as to the medical malpractice claims alleged against defendant Dr. Parker in Count II.  The Court should allow plaintiff to amend her medical malpractice claim against Dr. Parker with respect to his actions on or after March 1, 2019.

E.    The motion should be **GRANTED without prejudice** as to the medical malpractice claims alleged against defendants LPN Freed and LPN Thelen in Count IV.  The Court should allow plaintiff to amend her medical malpractice claim against LPN Freed and LPN Thelen with respect to their actions on or after March 1, 2019.

Dated:  July 29, 2021                                    /s/ Ray Kent
                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).