UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA HEHRER,
as Personal Representative
of the Estate of Joseph Hehrer, deceased,

                Plaintiff,                Case No. 1:20-cv-1079

v.                                            Hon. Janet T. Neff

CLINTON COUNTY, *et al.*,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

Joseph Hehrer ("Mr. Hehrer") died on March 13, 2019, from multisystem organ dysfunction due to diabetic ketoacidosis. *See* Death Certificate (ECF No. 126-12). Plaintiff, the personal representative of Mr. Hehrer's Estate, alleged that defendants Advanced Correctional Healthcare, Inc. ("ACH"), Wendy Lynn Freed, L.P.N., Daryl Tucker Parker, M.D., and Dawn Thelen, L.P.N. (collectively the "ACH defendants") committed malpractice in treating Mr. Hehrer while he was a detainee at the Clinton County Jail. In this regard, plaintiff's third amended complaint alleged that Dr. Parker was negligent in caring for Mr. Hehrer because he failed to identify, diagnose and treat symptoms of diabetic ketoacidosis and or septic shock. *See* Third Amend. Compl. (ECF No. 59, PageID.1002-1008). This matter is now before the Court on Dr. Parker's combined "Motion to strike plaintiff's internal medicine expert, Neil Farber, M.D.'s testimony and for summary judgment on plaintiff's medical malpractice claims" (ECF No. 120).

1

## I.    Background

Plaintiff brought the medical malpractice claims pursuant to this Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. United States Trotting Association*, 174 F.3d 733, 741 (6th Cir. 1999). Under Michigan law, "[i]n a medical malpractice case, plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer v. Schanz*, 449 Mich. 469, 484; 536 N.W.2d 760 (1995) (footnote omitted). "Failure to prove any one of these elements is fatal." *Id.* Michigan courts recognize "that in medical malpractice cases issues of negligence and causation are normally beyond the ken of laymen." *Thomas v. McPherson Community Health Center*, 155 Mich. App. 700, 705; 400 N.W.2d 629 (1986).[1] Accordingly, "expert testimony is required to establish the applicable standard of conduct, the breach of that standard, and causation." *Id*.

As an initial matter, the Court looks to three evidentiary rules related to expert witnesses. Fed. R. Evid. 601 ("Competency to testify in general") provides that,

> Every person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision.

---

[1] *See* M.C.L. § 600.2912a(1), which provides in pertinent part that:

"in an action alleging malpractice, the plaintiff has the burden of proving that in light of the state of the art existing at the time of the alleged malpractice:

(a) The defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.
(b) The defendant, if a specialist, failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury."

Next, Fed. R. Evid. 702 ("Testimony by expert witnesses") states,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702 (eff. Dec. 1, 2023).

As interpreted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), "Rule 702 grants district courts 'discretion in determining whether . . . a proposed expert's testimony is admissible, based on whether it is both relevant and reliable.'" *Wilden v. Laury Transportation, LLC*, 901 F.3d 644, 649 (6th Cir. 2018).

> The Supreme Court has identified several non-exclusive factors that lower courts may consider in assessing reliability: (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the technique has a high known or potential rate of error; and (4) whether the technique enjoys general acceptance within the relevant scientific, technical, or other specialized community.

*Id*. (citing *Daubert*, 509 U.S. at 593-94).

Finally, Fed. R. Evid. 703 ("Bases of an expert's opinion testimony") provides that,

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

In applying these rules, the Sixth Circuit explained that,

> Rule 601 deals with the witness's *competency*, which makes it essentially substantive (because it is "intimately intertwined" with the substantive law), whereas Rule 702 (as interpreted by *Daubert*) is truly a measure of *qualification*, as it is directed at the science and methodology behind the witness's testimony, and is therefore a procedural issue.

*Legg v. Chopra*, 286 F.3d 286, 291 (6th Cir. 2002) (emphasis in original).

"Where a state has provided by statute certain competency criteria for expert witnesses in medical malpractice actions, the federal court sitting in diversity is required to apply the state competency rules pursuant to Rule 601." *Slifcak v. N. Michigan Hospitals, Inc.*, No. 1:90-cv-565, 1991 WL 626469 at *2 (W.D. Mich. Aug. 20, 1991). Accordingly, in a medical malpractice action brought under Michigan law, "Rule 601 of the Federal Rules of Evidence requires this Court to apply the state competency rule, M.C.L.A. § 600.2169; M.S.A. § 27A.2169, in determining whether a medical specialist is competent to testify on the appropriate standard of care." *Id.*

In summary, in a Michigan medical malpractice case, "M.C.L. § 600.2169 speaks to the professional competency an expert witness must possess in order to testify regarding standard of care issues" under state law, and Fed. R. Evid. 702 "speaks to the science and methodology behind an expert's opinions". *Campbell v. United States*, No. CV 19-12383, 2020 WL 9349618 at *7 (E.D. Mich. Nov. 23, 2020).

In a medical malpractice case brought in state court, the Michigan Supreme Court has stated that, "[t]he proponent of expert testimony in a medical malpractice case must satisfy the court that the expert is qualified under MRE 702, MCL 600.2955 and MCL 600.2169." *Clerc v. Chippewa County War Memorial Hospital*, 477 Mich. 1067, 1067; 729 N.W.2d 221 (2007).

4

In Michigan, the admissibility of expert witness testimony is governed by MRE 702, the state's counterpart to Fed. R. Evid. 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Edry v. Adelman*, 486 Mich. 634, 639; 786 N.W.2d 567 (2010). "MRE 702 incorporates the standards of reliability that the United States Supreme Court described to interpret the equivalent federal rule of evidence in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Id*.

For purposes of a medical malpractice case, the state trial court, acting as a "gatekeeper" under MRE 702, considers all of the factors shown in M.C.L. § 600.2955(1).[2] *Clerc*,

---

[2] M.C.L. § 600.2955(1) provides:

"(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
> (b) Whether the opinion and its basis have been subjected to peer review publication.
> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
> (d) The known or potential error rate of the opinion and its basis.
> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.
> (f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.
> (g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation."

477 Mich. at 1067-68. "If applicable, the proponent must also satisfy the requirement of MCL 600.2955(2) to show that a novel methodology or form of scientific evidence has achieved general scientific acceptance among impartial and disinterested experts in the field."[3] *Id*. at 1068.

Because this medical malpractice claim is brought in federal court, Michigan's procedural rules for expert testimony, MRE 702 and M.C.L. § 600.2955, do not apply. Rather, the science and methodology behind the doctor's testimony are evaluated under Fed. R. Evid. 702. *See Legg*, 286 F.3d at 29.

However, Michigan's state competency rule, M.C.L. § 600.2169, applies as a matter of substantive law. Here, the relevant portion of the statute is M.C.L. § 600.2169(1)(a), which states that,

> In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

### II.     Motion to strike Dr. Farber's testimony

Defendant seeks to strike Dr. Farber's expert testimony on standard of care because: (A) Dr. Farber is relying only on his own experience to formulate his opinions; (B) Dr. Farber is not familiar with the standard of care within the specialty of "correctional medicine" or with Dr. Parker's "contractual obligations"; (C) Dr. Farber "lacked a critical understanding of Dr. Parker's

---

[3] M.C.L. § 600.2955(2) provides, "(2) A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field."

6

notes and the information he had when making his notes"; (D) portions of Dr. Farber's opinions "about the failure to take orthostatic blood pressures or use a glucometer should be stricken since such specific acts were not set forth in the Complaint or his declaration"; and, (F) "Dr. Farber's testimony regarding alleged additional treatment that could have been provided by Dr. Parker and the ACH Defendants should be stricken because Dr. Farber could not provide any evidence or support for whether such additional treatment would demonstrate any symptoms." Defendants' Brief at PageID.2889-2900, 2904-2908.

Defendant's objection (B) appears to contest Dr. Farber's competency to testify on the standard of care in "correctional medicine" or "correctional work," which defendant suggests is something like a specialty (citing the standard of care for a specialist in M.C.L. § 600.2912a(1)(b)). *See* Defendant's Brief at PageID.2891. Defendant cites no support for her suggestion that Dr. Farber has no credentials to testify as an expert because "he has no experience in correctional medicine." *Id*. at PageID.2893. Defendant's vague argument is not sufficient to strike Dr. Farber as an expert witness.

Defendant's objections (A), (C) and (F) involve the Court's gatekeeper role under *Daubert* as to what expert testimony can be presented to a jury and what testimony must be excluded. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (extending gatekeeping function to all expert testimony). The Court must determine "whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Id*. at 156 (internal quotation marks omitted).

As the court explained in *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012):

> A district court's task in assessing evidence proffered under Rule 702 is to determine whether the evidence "both rests on a reliable foundation and is relevant

to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). One key consideration is "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id*. at 592-93, 113 S.Ct. 2786. The inquiry is "a flexible one," and "[t]he focus . . . must be solely on principles and methodology, not on the conclusions they generate." *Id*. at 594-95, 113 S.Ct. 2786. An expert who presents testimony must "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

With respect to objection (A), assuming that Dr. Farber's testimony is based solely on his experience, "neither *Daubert* nor its progeny preclude experience-based testimony . . . nor do they prohibit trained experts from forming conclusions by extrapolating from existing data." *Butler v. First Acceptance Ins. Co.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009) (citing *Kumho*, 526 U.S. at 151 and *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). However, "[t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amendments)). Dr. Farber must connect his experience with the specific facts of this case. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and *how* that experience is reliably applied to the facts." *Id*. (quoting Fed. R. Evid. 702 advisory committee's note (2000 amendments.) (emphasis added). In this regard, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Next, neither objection (C) (Dr. Farber lacked "critical understanding" of Dr. Parker's notes) nor objection (F) (potential additional treatments) are sufficient to exclude all of Dr. Farber's potential testimony which relates to the standard of care. Dr. Farber has specialized

8

knowledge.  Both Dr. Farber and Dr. Parker are board certified internal medicine doctors.  *See* Dr. Farber Dep. (ECF No. 127-1, PageID.5641); Defendant's Motion at PageID.2850; Dr. Parker Dep. (ECF No. 120-1, PageID.2913, 2922-2923, 2928).  Whether Dr. Farber's specialized knowledge will assist the jury in determining the medical issues in this case depends on the evidence presented at trial and Dr. Farber's testimony related to that evidence.  *See Kumho*, 526 U.S. at 156. In this regard, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

With respect to objection (D), defendant contends that Dr. Farber's admission during his deposition "that several specific acts (*e.g.*, orthostatic blood pressures and glucometer) that he testified to at his deposition were not set forth in the initial affidavit declaration warrants that such claims be stricken."  Defendant's Brief at PageID.2899.  Defendant's objection consists of three questions from Dr. Farber's 147-page deposition (ECF No. 127-1) and cites a case stating the general proposition that, "[w]hen a declaration fails to advise the defendant with reasonable certainty, according to the circumstances of the case, of the facts upon which plaintiff proposes to rely, and will seek to prove it, it cannot be sustained." *Simonelli v. Cassidy*, 336 Mich. 635, 644, 59 N.W.2d 28, 32-33 (1953).  Defendants' Brief (ECF No. 120, PageID.2899-2900) (emphasis omitted).  Defendant's conclusory argument does not address why Dr. Farber's opinion testimony regarding the orthostatic blood pressures and glucometer should be summarily stricken in this case. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125

F.3d 989, 995-96 (6th Cir. 1997). For all of these reasons, defendant's motion to strike Dr. Farber's testimony should be denied.

### III. Motion for summary judgment

### A. Standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Discussion

Plaintiff contends that "[e]ven accepting Dr. Farber's testimony, based upon his understanding of the pertinent facts, his testimony demonstrates that there is no genuine dispute that Dr. Parker's actions were appropriate."  Defendants' Brief at PageID.2900-2904.  In this regard, defendant presents a brief abstract of some of Dr. Farber's testimony as follows:

1. "Dr. Parker did not know Mr. Hehrer was exhibiting signs and symptoms of diabetic ketoacidosis. (Ex B, 84:16 to 84:21)."

2. "Mr. Hehrer was not in septic shock at the jail, and 'I have no way of knowing whether he had sepsis or not.' (Ex B, pp. 61:25 to 62:5)."

3. "There is no evidence disputing that Mr. Hehrer's vomiting resolved for almost two days. Based upon the records, there is no indication that the ACH Defendants were aware of Mr. Hehrer having any further complaints of vomiting from March 5, 2019 at 11:00 p.m. to the morning of March 8, 2019. (Ex B, 70:4 to 70:17)."

4. "Mr. Hehrer explained his weight loss to Dr. Parker, telling him that he always loses weight whenever he gets sick: (Ex B, pp. 85:18 to 85:21)."

5. "Dr. Parker did not violate the standard of care by relying on nurses to report signs and symptoms to him. (Ex B, pp. 82:3 to 82:7)."

6. "The medications ordered by Dr. Parker on March 6, 2019 (i.e., Prilosec and Zofran) were appropriate to treat the symptoms that Mr. Hehrer had reported experiencing (i.e., nausea and vomiting): (Ex B, pp. 92:16 to 93:13)."

7. "That Dr. Parker also ordered that Mr. Hehrer be placed in the medical observation area at the jail so he could be closely observed until he could see him later that day, at

which point Mr. Hehrer reported to Dr. Parker that his condition improved, and he was not sick anymore. (Ex B, pp. 93:14 to 93:20; pp. 97:1 to 97:6)."

    8. "Ultimately, Dr. Farber agreed that based upon the facts in the record, including Mr. Hehrer's blood pressures and respiratory rates that were taken throughout his time at the jail, and Mr. Heher's actual history to the ACH Defendants, there was no reason to rush him to the hospital or suspect DKA or septic shock."

*Id*. at PageID.2900-2904.

    In response, plaintiff presents her own brief extracts from Dr. Farber's testimony explaining how Dr. Parker breached the standard of care in this matter. For example, "[w]hen [Dr. Parker] was called that the patient had vomiting [sic] again, yes, sir, he needed to go and see the patient and review the records again"; that Dr. Parker did not perform an adequate examination of Mr. Hehrer's abdomen to evaluate nausea and vomiting; that Dr. Parker ordered only regular labs and did not demand an immediate blood glucose test; and, that there was a glucometer available in the jail and he should have been used immediately. Plaintiff' Response (ECF No. 127, PageID.5607-5608); Dr. Farber's Dep. (ECF No. 127-1, PageID.5702, 5727-2728, 5735).

    Defendant cannot be granted summary judgment by simply pointing out small portions of Dr. Farber's testimony which may suggest that Dr. Parker's actions were appropriate. For purposes of summary judgment, the Court views the evidence in the light most favorable to the non-moving party, in this case the plaintiff, who presented evidence from Dr. Farber that Dr. Parker violated the standard of care.[4]

---

[4] In this regard, the narrow issues framed by defendant, and brief quotes from Dr. Farber's deposition testimony cited in support of these issues, do not address vast amount of evidence which the parties have presented regarding Mr. Hehrer's medical treatment before he died. Since November 15, 2023, plaintiff and the 12 remaining defendants have submitted over 8,000 pages of exhibits as well as thumb drives of surveillance video related to the incidents alleged in this lawsuit. *See* Exhibits ECF Nos. 118-1 through 118-38 (PageID.1862-2447), 119-1 through 119-7 (PageID.2494-2847), 120-1 through 120-7 (PageID.2910-3259), 121-1 through 121-8 (PageID.3294-3678), 123 (PageID.3682-3693), 126-1 through 126-12 (PageID.3739-5578), 127-1 through 127-14 (PageID.5621-7731), 128-1

Genuine issues of material fact exist with respect to whether Dr. Parker breached the standard of care. Accordingly, defendant's motion for summary judgment based upon Dr. Farber's expert opinions should be denied.

### IV.    RECOMMENDATION

Accordingly, I respectfully recommend that defendants' combined motion to strike Dr. Farber's testimony and for summary judgment (ECF No. 120) be **DENIED**.

Dated: August 19, 2024                                /s/ Ray Kent
                                                     RAY KENT
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

through 128-15 (PageID.7766-9653), 130-1 through 130-49 (PageID.9712-10286), 134-1 and 134-2 (PageID.10318-10362); *see* thumb drives (ECF Nos. 122, 131, 133). This mountain of evidence, which includes, for example, a 1,590-page compilation of the March 9, 2019 EMS report and "Sparrow Hospital records" (ECF No. 127-11, PageID.6079-7668), underscores the fact-intensive nature of this case, which involves Mr. Hehrer's medical condition from January 23, 2019 (when he was arrested and booked into the jail) until March 9, 2019 (when he was sent from the jail to the hospital via ambulance). *See* Third Amend. Compl. at PageID.970, 987-989.